UNITED STATES, Appellee

v.

BENEDICT M. RYAN, Private E-2, U. S. Army, Appellant

3 USCMA 735, 14 CMR 153

No. 2828

Decided February 12, 1954

Lt Col James C. Hamilton, U. S. Army, and 1st Lt Jack W. Tucker, U. S. Army, for Appellant.

Lt Col William R. Ward, U. S. Army, and 1st Lt Joseph C. Chandler, U. S. Army, for Appellee.

## Opinion of the Court

Paul W. Brosman, Judge:

The accused here was charged with the wrongful appropriation of a motor vehicle—the property of the United States Government—and with damaging the same vehicle through neglect, violations respectively of the Uniform Code of Military Justice, Articles 121 and 108, 50 USC §§ 715 and 702. He pleaded not guilty to all charges and specifications, but was found guilty of both offenses, and sentenced to be dishonorably discharged from the service, to forfeit all pay and allowances, and to be confined at hard labor for one year. The findings and sentence were approved by the convening authority and subsequently approved, without opinion, by a board of review in the office of The Judge Advocate General, United States Army. Later, through action by The Judge Advocate General of the service concerned, the execution of the punitive discharge was suspended until the accused's release from confinement, or until completion of appellate review, whichever is the later.

On petition by the accused, further

review by this Court was granted on the following two issues:

(1) Whether the evidence is sufficient to support the court's findings of guilty of damaging Government property through neglect, and

(2) Whether the argument by trial counsel with respect to the same offense, and based on the doctrine of res ipsa loquitur, constitutes error prejudicial to a substantial right of the accused.

II

No errors have been assigned as to the findings of guilty under Charge I and its Specification—that alleging wrongful appropriation—and the facts underlying the offense in question here may be stated in few words. At the time of the events with which we are concerned, the accused was a member of the guard of the 504th Airborne Infantry Regiment, and the "jeep" involved was one assigned to the Regimental Officer of the Day. Following

the alleged wrongful appropriation, and during the early morning hours of October 25, 1952, the accused, riding alone, was observed by two other members of the guard detail to be driving the vehicle on Pratt Street near the Durham Street intersection on the Fort Bragg Reservation. The accused sought to turn from Pratt into Durham, failed to do so, and drove the truck against a guard rail opposite the intersection. The damage consisted of minor injuries to one fender, one shock absorber, one front spring, the hood, the left running board and the left body panel. Upon a second examination, it was discovered that the drag link was bent and the sector shaft twisted. These latter parts constitute elements of the steering mechanism. The cost of repairs aggregated only $35.00.

According to the testimony of the two eyewitnesses to the crash, the vehicle was operating in second gear at the time the accused sought to accomplish the turn. He was alone in the driver's seat. Neither witness was willing to estimate the speed at which the vehicle was proceeding, but there was no showing whatever that it was excessive by any standard. Although the accident took place in darkness, the "jeep's" lights were in operation at the time, and it was traveling on the proper side of the street. There was no showing that the accused was intoxicated, or even that he had been drinking. According to the Officer of the Day, he spoke with the accused from a distance of approximately two feet immediately after the accident. He observed no odor of alcohol whatever, nor any want of coordination on the latter's part—and no other evidence bearing on the subject was offered. The net of all this is that the accused was driving the vehicle in question; that while he was operating it, it struck a street intersection guard rail; and that the car was damaged. There is no more. The record is wholly devoid of any slightest shred of evidence that the accused was driving at an excessive speed, or in any sort of reckless manner; that he was under the influence of alcohol; or that, at the time of the accident, he was engaged in the violation of traffic or other

safety regulations of any nature. His headlights were on; he was driving on the right-hand side of the road; and, at the time he attempted the turn he was operating the truck in second gear.

Reference has been made earlier to the fact that the vehicle involved was examined by mechanics on two occasions following the accident. Not until the second investigation was it discovered that its steering gear was defective in two particulars. The drag link was slightly bent and the sector shaft was twisted. During the court's examination of Sergeant Johnson, the motor mechanic who conducted both examinations, the opinion was expressed by the witness that the drag link injury was doubtless a product of the guard rail impact. The sergeant was unwilling to express any sort of view on the probable cause of harm to the sector shaft, and whether it existed prior to the accident or was produced by it. The Officer of the Day, however, testified on redirect examination that he had been a passenger in the "jeep" at some time during the evening of October 24, 1952, and that he had observed nothing which suggested mechanical difficulty.

All of the evidence in the case was developed through the testimony of prosecution witnesses. The accused elected to remain silent, and no other witnesses were called by the defense. On the basis of the testimony set out earlier in this opinion, the court-martial found the accused guilty of damaging negligently the automobile he was also convicted of having wrongfully appropriated. We are now asked by the Government to say that the findings under Charge II and its Specification were sustained by this evidence. We cannot do so. In fact, we believe that the evidence before the court-martial was wholly insufficient as a matter of law to support findings of guilt of the accused of the second offense alleged against him. We cannot possibly see that more was shown than that the accused was driving a Government vehicle, and that, while he was operating it, he ran against an obstruction and injured the car. Manifestly—and apart from the matters mentioned in the suc-

**737**

ceeding division of this opinion—this is not enough under any standard laid down by this Court—in truth, under any criterion acceptable to any of us. United States v. McCrary, 1 USCMA 1, 1 CMR 1; United States v. O'Neal, 1 USCMA 138, 2 CMR 44; United States v. Peterson, 1 USCMA 317, 3 CMR 51; United States v. Yarborough and Marshall, 1 USCMA 678, 5 CMR 106; United States v. Knoph, 2 USCMA 108, 6 CMR 108. It follows that dismissal is mandatory. Uniform Code, supra, Article 67 (e), 50 USC § 654.

## III

At the conclusion of the case for the Government, defense counsel entered a motion for findings of not guilty as to Charge II and its Specification. At that time, and in argument on the motion, trial counsel—as understood by counsel at the *nisi prius* hearing, as well as by appellate defense counsel before us now —urged upon the law officer and the court the application to the facts of this case of the doctrine of *res ipsa loquitur*. The motion for findings was denied by the law officer without objection from the court-martial. Thereafter, when the defense had rested, and in argument on the merits under the charge of negligent damage, trial counsel reiterated his reference to this common law principle and discussed and read to the court from certain legal authorities dealing with the general subject. Defense counsel resisted these arguments, of course, and sought to distinguish between the doctrine's applicability to civil cases, on the one hand, and to criminal proceedings, on the other.

In the Staff Judge Advocate's review in the instant case the following language is found:

". . . It must be first noted that the evidence as presented does not in itself prove the existence of negligence. If the doctrine of res ipsa loquitur is not applicable, then the record is legally insufficient to support the findings of guilty of charge II and the specification thereunder."

Is the common law doctrine in question appropriate for use in the area of criminal law administration? We are unaware of any criminal case in which it has been applied explicitly, and none has been called to our attention through diligence of counsel. Nor, on the other hand, has authority been presented to us which reflects rejection of its use in the criminal scene in specie and unequivocally. But cf. Sweeney v. Erving, 228 US 233, 33 S Ct 416, 57 L ed 815; United States v. Tucker and Clark, 13 BR 155; United States v. Solander, 66 BR 35; Commonwealth v. Stosny, 152 Pa Super 236, 31 A2d 582; Hawkins v. State, 120 Fla 905, 163 So 133; Ex parte Reid, 103 Cal App 380, 284 Pac 518; State v. Simler, 350 Mo 646, 167 SW2d 376. Both analytically and historically, there is much to be said for the position of defense counsel—both trial and appellate—on the point. It is certainly true that the growth of this legal idea is traceable solely through the civil, as distinguished from the criminal law—where, it is to be noted, a mere preponderance of the evidence constitutes the quantum of proof. It is also observed that the Manual for Courts-Martial, United States, 1951, paragraph 187b, provides for something very like *res ipsa* in the following language:

"If it is shown by either direct or circumstantial evidence that the property was issued to the accused, it may be presumed that the damage, . . . unless satisfactorily explained, was due to the neglect of the accused. The rule of this subparagraph applies only to items of individual issue."

In view of the sharp limitation on the use of the principle enunciated in the foregoing quotation, it might well be argued, in terms of *expressio unius est exclusio alterius*, that its application elsewhere has been denied.

Although we tend to question the availability of the doctrine of *res ipsa loquitur* for use as a crutch to courts-martial trial counsel, the present problem does not require that the matter be dealt with as to all cases—and we seek to supply no definitive answer. We are sure, however, that we should not apply it to the type of prosecution before us now. The specific considerations which

gave birth to the doctrine in the field of civil litigation simply do not appear to be present here. Too many possible explanations for the damage in suit are inescapably available—and we must conclude that the principle is functionally inapplicable. We see no need for a consideration of other problems implicit in the second assignment of error. Cf. United States v. Fair and Boyce, 2 US CMA 521, 10 CMR 19.

It follows from what has been said that the decision of the board of review must be reversed and the charge of negligent damage dismissed. It is noted, however, that there remains the offense of wrongful appropriation, of which the accused was properly found guilty on the basis of sufficient evidence. Accordingly, the record is returned to The Judge Advocate General, United States Army, for reference to a board of review for possible reassessment of sentence.

Chief Judge QUINN and Judge LATIMER concur.