UNITED STATES, Appellee

v

CLAYTON T. BRYAN, Airman Basic, U. S.
Air Force, Appellant

19 USCMA 184, 41 CMR 184

No. 22,160

January 16, 1970

*Colonel Bertram Jacobson* argued the cause for Appellant, Accused.

*Colonel James M. Bumgarner* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Robert W. Vayda* and *Major Frank T. Moniz.*

Opinion of the Court

FERGUSON, Judge:

The accused was convicted by general court-martial, convened in the Federal Republic of Germany, of one specification each of negligent homi-cide (Charge I) and violation of a law-ful general regulation (Charge III), in violation of Articles 134 and 92, Uniform Code of Military Justice, 10 USC §§ 934 and 892, respectively. He was

sentenced to a bad-conduct discharge, total forfeitures, and confinement at hard labor for one year. Intermediate appellate authorities have affirmed the findings and sentence without change. We granted review on two issues, both relating to Charge I: Whether the court-martial had jurisdiction of the offense alleged, and, if so, whether the evidence is legally sufficient to sustain the finding of guilty.

The first error is related to the application of the Supreme Court's opinion in O'Callahan v Parker, █ 395 US 258, 23 L Ed 2d 291, 89 S Ct 1683 (1969). The offense of negligent homicide (Charge I) occurred in the Federal Republic of Germany, the victim was a German national, and trial was held in that country. Since the date of our grant in this case, we held in United States v Keaton, 19 USCMA 64, 41 CMR 64, that the constitutional limitation on court-martial jurisdiction laid down in O'Callahan v Parker, supra, is inapplicable to courts-martial held outside the territorial limits of the United States. See also United States v Stevenson, 19 USCMA 69, 41 CMR 69, and United States v Easter, 19 USCMA 68, 41 CMR 68.

Accordingly, we hold in this case that the court-martial had jurisdiction to try the accused for the charged offenses.

Insofar as the sufficiency of the evidence to sustain the finding under Charge I is concerned, a review of the facts in this case is necessary.

The record reflects that in the early morning hours of October 16, 1968, a motor vehicle, owned by the accused, ran off a road in Neuhaus, Germany, and struck a stone wall. Margarete Soldierer, a passenger in the vehicle, died as a result of the injuries incurred therein. The accused and two other airmen, Sergeant Black and Airman Lopez, passengers in the car at the time, were also injured but recovered. The defense presented no evidence on the merits and, of the two passengers, only Airman Lopez testified for the prosecution. The testimony of an eyewitness to the accident was received by way of stipulation.

According to the testimony of Airman Lopez, he, Black and Airman Holland met the accused in a bar in Bitburg, Germany, some time before midnight on October 15th. Holland was acquainted with the accused but Lopez and Black were not. Later, they all went to the Wilhelmshoehe bar in Trier, Germany, using the accused's car for transportation. After the bar closed, he, Black, Holland, and a girl named Margarete and another girl waited for the accused in the latter's car in order to get a ride back to Bitburg. Holland and the unknown girl left in a taxi before the accused returned. According to Lopez, he and Black "were both pretty drunk, I guess." Lopez was unable to recall any of the details of the ride to Bitburg, after leaving the Wilhelmshoehe. When asked by trial counsel, "What is the next thing you remember?" Lopez replied, "I woke up in the hospital here at Bitburg." On cross-examination, Lopez testified that he did not see the accused drinking at any time during the evening.

The stipulated testimony of an eyewitness to the accident (Prosecution Exhibit 12) is, in pertinent part, as follows:

"My name is Christian Hau and I reside at House #34, Suelm, Germany. I am employed as a watchman in Trier, Germany.

"In the early morning hours of 16 October 1968, prior to dawn, I was driving from Bitburg to Trier, Germany on Highway B–51. It was very foggy, with visibility approximately sixty meters. The road surface was wet from the fog and the dew.

"In the vicinity of the Sonnen Gasthaus in Neuhaus, Germany I observed a pair of headlights coming in my direction. I cannot make any estimation as to the speed of this vehicle. From the appearance of the headlights I assumed that the automobile was about to enter a drive-

way that I knew to be at that location. Instead the vehicle collided with a stone wall on the side of the driveway. The impact lifted the front of the vehicle into the air, whereafter it overturned several times, coming to rest on the opposite side of the highway in a ditch. I saw no other vehicles involved in the accident.

"By this time I had halted my vehicle and approached the wrecked car with the intent of lending assistance. The vehicle was resting partially on the driver's side, with the driver's door open slightly. An individual was hanging out through this door. There were flames in the front of the vehicle, and as I was unable to extract the individual, I pulled off his jacket to extinguish the flames. Other persons arrived and we succeeded in righting the vehicle and freeing the occupants. I know that there were four occupants. Whether one was a girl or not, I cannot say. I can say that there was no girl in the front seat of the vehicle, since I personally helped to remove the two male occupants from this portion of the vehicle.

"I cannot say with certainty whether or not the accused was in the driver's position of the vehicle."

Examination of the accident scene by security police investigators revealed that the accused's Taunus, in rounding a left curve, went off the road on the right or outer side of the curve. The vehicle on leaving the road ran along a soft cinderlike shoulder at the entry to a driveway, knocked over a road marker and then hit the curved portion of a stone wall. Photographs taken at the scene (Prosecution Exhibits 4A–I) reflect the presence of heavy fog in the air, the extent of the damage to the car, and its presence, in an upright position, in a ditch on the opposite side of the road from the wall. There were no skid marks on the road or on the shoulder and the chief security investigator testified that, "All the evidence that I could find at the scene showed that the vehicle in question just drove off the road into the wall." A diagram of the accident, prepared by the investigator and introduced as Prosecution Exhibit 9, reflects that the accident occurred at a point where the road made a sweeping curve to the left and that the wall in question was on the far side of a driveway which provided egress from the road at about a forty-five degree angle. The area of the accident was not posted as to speed ("an open speed limit") and the surface of the road was wet.

It is important to note at this point that in addition to the regulation offense, the accused was charged with operating a passenger car, while drunk (Charge II) and involuntary manslaughter, by culpable negligence (Charge I), in violation of Articles 111 and 119, Code, supra, 10 USC §§ 911 and 919, respectively. He was found not guilty of drunk driving and, as noted above, the charge of involuntary manslaughter was reduced to negligent homicide. His defense to the original charges was geared to demonstrating that there was no evidence to show that he was in fact the driver of the car and that, although he was observed to drink at the bars in Bitburg and Trier, as testified to by witnesses, he was not intoxicated. The court, by its findings, obviously agreed there was insufficient evidence to find beyond a reasonable doubt that the accused was drunk on the night in question. Its holding that he was guilty of negligent homicide adequately demonstrates they believed the accused was the driver of the automobile at the time of the accident.

In his instructions to the court, the law officer delineated for the members the elements of the charged offense of involuntary manslaughter by culpable negligence and of the lesser included offense of negligent homicide by reason of negligence. In addition, he specifically told the court:

"Now, merely simple negligence is required to find the accused guilty of the lesser included offense of neg-

ligent homicide. This is defined in law as the absence of due care. It is an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care for the safety of others which a reasonably prudent man would have exercised under the circumstances."

This is a correct definition of simple negligence. We test the facts of this case by the foregoing standard. United States v Greenfeather, 13 USCMA 151, 32 CMR 151; United States v Russell, 3 USCMA 696, 14 CMR 114.

In the case at bar, the direct evidence of record reflects that the accused, while driving along a road in Germany, failed to negotiate a curve and the car struck a stone wall. A passenger in the vehicle sustained fatal injuries thereby. The night was foggy, the road was wet, and visibility was somewhat limited. There were no skid marks on the road or on the shoulder. As the chief security investigator testified, "All the evidence that I could find at the scene showed that the vehicle in question just drove off the road into the wall."

Evidence of speeding may be considered in determining the question of negligence, as may evidence of intoxication. United States v Greenfeather and United States v Russell, both supra. There is in this case, however, no evidence of speed. The only eyewitness to the accident could not make an estimate of the speed of the vehicle and there were no skid marks on the curve of the road or on the shoulder. United States v Greenfeather, supra. Nor was there, as in Greenfeather, any evidence that the accused was hurrying in order to return at a particular time or that he drove across the center line. Several witnesses saw the accused drinking on the night in question, but evidence that he drove erratically (United States v Russell, supra) or that he had a high blood alcohol content at the time (United States v Schultz, 1 USCMA 512, 4 CMR 104) was nonexistent. To the contrary, he was found not guilty of drunk driving and while such finding is not conclusive of his condition (United States v Schultz, supra), it can be considered in weighing the evidence for sufficiency on appellate review.

In our opinion, the evidence in this case appears no stronger than that which pertained in United States v Ryan, 3 USCMA 735, 14 CMR 153. In Ryan, the accused was charged with damage to a Government vehicle through neglect. In substance, the evidence reflected:

". . . that the accused was driving the vehicle in question; that while he was operating it, it struck a street intersection guard rail; and that the car was damaged. There is no more. The record is wholly devoid of any slightest shred of evidence that the accused was driving at an excessive speed, or in any sort of reckless manner; that he was under the influence of alcohol; or that, at the time of the accident, he was engaged in the violation of traffic or other safety regulations of any nature. His headlights were on; he was driving on the righthand side of the road; and, at the time he attempted the turn he was operating the truck in second gear." [Ibid., at page 737.]

In finding the evidence insufficient in Ryan, we declined to apply the doctrine of res ipsa loquitur. As we stated at page 739, "Too many possible explanations for the damage in suit are inescapably available—and we must conclude that the principle is functionally inapplicable."

So, too, in this case, we find the evidence insufficient to sustain the finding of guilty to a charge of negligent homicide.

The decision of the board of review as to Charge I is reversed and the charge and its specification are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Air Force. The Court of

**187**

Military Review may reassess the sentence on the basis of the remaining finding of guilty of Charge III.

Chief Judge QUINN and Judge DARDEN concur.