348

UNITED STATES, Appellee,

v.

Carnies McMURRY, Corporal, U. S.
Marine Corps, Appellant.

No. 33,393.
NCM 76 0012.

U. S. Court of Military Appeals.

April 9, 1979.

For Appellant: Lieutenant Karl Zobrist, JAGC, U.S.N.R. (argued); Lieutenant Christopher C. Henderson, JAGC, U.S.N.R.

For Appellee: Captain Mark A. Humble, U.S.M.C.R. (argued); Lieutenant Colonel P. N. Kress, U.S.M.C. (on brief); Lieutenant Patrick A. Fayle, JAGC, U.S.N.

Opinion

PERRY, Judge:

Appellant's challenge to his conviction for possessing heroin in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, on the ground that the evidence[1] does not establish his possession of the substance, must be sustained. *United States v. Calley*, 22 U.S.C.M.A. 534, 539, 48 C.M.R. 19, 24 (1973). This determination moots the other granted issue.

The record discloses that on April 4, 1975, appellant and his roommate, Private Mason, went off base to an apartment occupied by Thomas, Horton, and Jackson,[2] who requested that they help package some heroin which Thomas, Horton, and Jackson provided. Thirty balloons were packaged and the rest of the heroin was placed in a bottle and hidden outside the house. Mason took 10 of

---

1. We view the evidence in the light most favorable to the Government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

2. These men were informants for the civilian police.

the balloons to the base. Thereafter, he took this heroin to his barracks room and hid it in the leg of the ironing board. The appellant was aware of its location. On April 11, the appellant went to look for the heroin but it was no longer in the ironing board leg. At this time Private Mason asked him what he was doing around the ironing board. His reply was that he was making sure the heroin was still here because he might have some buyers.[3] Mason then showed him the new hiding place—in the toilet tissue roller. Later a search of the tissue roller by the police, with the appellant's permission, revealed heroin. The Government points to the following evidence to show the appellant's ability to exercise control over the substance: (1) that the appellant told Private Mason that he might be able to obtain some buyers for the heroin; (2) that the appellant gave a man named Jesionowicz a balloon of heroin either on April 9 or 10.[4]

■ We view the first item of evidence as merely showing a willingness to help Mason to sell the heroin. This does not establish possession. More importantly, it is necessary that the accused have "conscious knowledge of the presence of the prohibited substance." *United States v. Alvarez*, 10 U.S.C.M.A. 24, 27, 27 C.M.R. 98, 101 (1958). On April 11, at the time he expressed this willingness to help sell the heroin, he did not know the location of the

heroin. Therefore, he was not in possession of the heroin on April 11.[5] The question then is whether he was in possession of the heroin at the Marine Corps Air Station, El Toro, California, *on or about April 11.*

■ It is noted that the convening authority disapproved the conviction of wrongful introduction of the heroin between April 4 and 11, 1975, because of the absence of evidence that the appellant was in the car when Mason carried the heroin aboard the base. Also, the heroin remained in Mason's car until April 9, when it was removed and hidden in the ironing board leg by Mason. There is no evidence that the appellant then had any voice in the disposition of the heroin. Only Mason handled it on post and chose its location. While it is true that the appellant knew its location at least initially, that is not enough to establish possession. The jury was so instructed. While the Government also produced evidence of prior use of some of this heroin by the appellant, that evidence does not add anything to the Government's case.[6] Thus, the only evidence of possession is the feigned transfer to Mr. Jesionowicz.[7] According to the staff judge advocate, the ability to "feign the transfer of heroin in the presence of Private MASON" indicates that the appellant "must have had dominion and control over the heroin." On the other hand, the defense argues that the absence of "proof that McMurry ever sold heroin"

---

3. By this time the appellant had decided to turn the heroin over to the authorities.

4. Only these dates are possible since the balloons were in Mason's car until the 9th and the appellant first learned of the new location on the 11th at 7:00 a. m. The purported transfer occurred in appellant's room, and he went to the authorities at 1045 hours on the 11th.

5. An event on April 9 or 10 cannot show possession on April 11 where knowledge of the location of the substance on the 11th is lacking.

6. The appellant was acquitted of using heroin, but "such finding is not conclusive"; rather evidence of use "can be considered in weighing the evidence for sufficiency on appellate review." *United States v. Bryan*, 19 U.S.C.M.A. 184, 187, 41 C.M.R. 184, 187 (1970). However, this evidence came solely from the appellant's

pretrial statement and was uncorroborated. Therefore, it cannot be considered for any purpose. *United States v. Seigle*, 22 U.S.C.M.A. 403, 47 C.M.R. 340 (1973).

7. While the jury could have chosen to disbelieve Mr. Jesionowicz' testimony that the balloon which McMurry gave him was empty, in view of the appellant's failure to so inform the authorities when he made his voluntary statement to them about transferring the balloon, they acquitted him of the transfer. Therefore, we decide this case with the view that the transfer was feigned. The jury was instructed that they could infer wrongfulness of the transfer "unless the contrary appears" and that a finding "that the accused had exclusive and conscious possession of heroin" would justify the inference "that the accused's possession was wrongful," without more on the matter of wrongfulness. In this situation where the instructions were not tailored to the specific con-

and the existence of "proof that he [merely] feigned a transfer of heroin" compels a contrary conclusion. The Government further argues that the appellant's possession is shown by the fact that while 10 balloons were brought aboard the base, only 6 were seized in the search.[8] Our view is that since the evidence fails to show an actual or attempted sale or transfer of the heroin to Mr. Jesionowicz (regardless of what Mason may have thought), the evidence is insufficient to sustain the conviction of possession.[9] *United States v. Brown*, 3 M.J. 402 (C.M.A.1977).

The decision of the United States Navy Court of Military Review is reversed. The charge is dismissed.

Judge COOK concurs in the result.

tention that the appellant had only given Mr. Jesionowicz the balloon in order to convince the others present that he gave him dope, we are satisfied that the verdict regarding the transfer did not turn on any lack of wrongfulness.

**8.** This fact does not establish whether it was McMurry or Mason who disposed of the missing 4 balloons, so it does not show appellant's possession.

FLETCHER, Chief Judge (dissenting):

I must record by dissent. My Brothers, in footnote 1, take and use only one-half of the admonition of *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), to appellate courts. To reach their conclusion they must, as the opinion and footnotes show, violate the balance of the prescription set forth in *Glasser,* which is: "It is not for us to weigh the evidence or to determine the credibility of witnesses."

I am in sympathy with the conclusion reached by my Brothers, for the facts disclose to me that the Government chose to execute the Judas Goat. The actions here by the Government preclude the change of heart syndrome from becoming a rewarding experience.

**9.** While the accused's involvement with the heroin off base on April 4 constitutes possession of the substance, he could not be convicted of that offense by exceptions and substitutions under the specification before us. *United States v. Dotson,* 17 U.S.C.M.A. 352, 38 C.M.R. 150 (1968).