**UNITED STATES, Appellee,**

v.

**Timothy KICK, Specialist Four, U. S. Army, Appellant.**

**No. 31,706.**
**SPCM 11080.**

U. S. Court of Military Appeals.

June 18, 1979.

judge erred to the substantial prejudice of the appellant by failing to give a limiting instruction *sua sponte* in this case to the court members regarding evidence of uncharged misconduct. The former is answered in the affirmative; the latter in the negative. Accordingly, we affirm the decision of the United States Army Court of Military Review.

Appearances: For Appellant—*Captain Barry J. Wendt* (argued); *Colonel Alton H. Harvey, Captain John R. Osgood* (on brief); *Captain Buren R. Shields, III, Captain Willard E. Nyman, III.*

For Appellee—*Captain Gay M. Holmes* (argued); *Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., Captain William C. Kirk* (on brief); *Colonel Thomas H. Davis, Major Steven M. Werner.*

## Opinion of the Court

FLETCHER, Chief Judge:

The appellant was convicted by a special court-martial of negligent homicide, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and reduction to the lowest enlisted grade. The convening authority approved the findings and the sentence, except that he suspended the execution of the punitive discharge with provision for automatic remission. The United States Army Court of Military Review has affirmed.

Two issues were granted for review by this Court. The first legal question to be decided is whether homicide through simple negligence is an offense under the Code. The second inquiry is whether the military

I

The appellant asserts that simple negligence by a service member which causes the death of another soldier may not lawfully be found to constitute a criminal offense under Article 134, UCMJ. The basis of his assertion is that, in light of case law from certain civilian jurisdictions,[1] a higher degree of negligence must be established by the Government in order to punish a civilian in criminal courts for homicide. Consequently, it is suggested that military law which interprets Article 134, UCMJ, to punish a lower degree of negligent conduct in causing a death is incorrect and without legal effect. We perceive the asserted dichotomy in required standards of conduct in the present case to be an issue of substantive criminal law without constitutional dimensions. *See Parker v. Levy,* 417 U.S. 733, 749–51, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). We agree such negligent conduct is generally not sufficient to support a criminal conviction for murder or manslaughter in military[2] and civilian[3] jurisdictions. Moreover, for the sake of this appeal, we will assume simple negligence in civilian jurisdictions[4] does not form the basis of any other criminal offense. Nevertheless, such conclusions do not necessarily resolve the issue of whether its punishment under Article 134, UCMJ, is unlawful if sufficient

1. The cases cited by the appellant are: *State v. Becker,* 241 N.C. 321, 85 S.E.2d 327 (1955); *State v. Baublits,* 324 Mo. 1199, 27 S.W.2d 16 (1930); *Cannon v. State,* 91 Fla. 214, 107 So. 360 (1926).

2. *See* Articles 118 and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 919, respectively.

3. *See* 65 C.J.S. Negligence § 1(13); 57 Am. Jur.2d, Negligence, § 96; Perkins, *Criminal Law,* pp. 62–4 (1957).

4. Professor Perkins indicated in 1957 that homicide occasioned by ordinary negligence was criminally punishable by statute in a minority of jurisdictions, but that it was not a crime at common law or by statute in the majority of jurisdictions. *See* Perkins, *supra.*

notice of its proscription previously existed in military law. *See Parker v. Levy, supra; United States v. Staten,* 6 M.J. 275, 276 (C.M.A.1979).

■ Article 134, UCMJ, and its statutory predecessor Article of War 96, proscribe all disorders and neglects by a member of the services which prejudice the good order and discipline in the armed forces and all conduct of a nature to bring discredit upon the armed forces. It must be construed in light of authoritative interpretations of military law, existing service customs and common usages. *See Parker v. Levy, supra,* 417 U.S. at 753–54, 94 S.Ct. 2547; *Dynes v. Hoover,* 61 U.S. (20 How.) 65, 15 L.Ed. 838 (1857). This Court in *United States v. Kirchner,* 1 U.S.C.M.A. 477, 4 C.M.R. 69 (1952), specifically found that negligent homicide by a service member could be properly punished under Article 134, UCMJ, as such a disorder. Past court-martial practices with respect to the prosecution of negligent homicide under Article of War 96, and up to that time under Article 134, UCMJ, were noted in detail in that opinion.[5] A more recent decision from the United States Army Court of Military Review clearly articulated the reasons for its prosecution [6] under Article 134, UCMJ:

> There is a special need in the military to make the killing of another as a result of simple negligence a criminal act. This is because of the extensive use, handling and operation in the course of official duties of such dangerous instruments as weapons, explosives, aircraft, vehicles, and the like. The danger to others from careless acts is so great that society demands protection.

*United States v. Ballew,* CM 434077 (unpublished), p. 2 (A.C.M.R. 16 July 1976).

■ We agree with both the assessment of the history of court-martial practice regarding this negligent disorder offense and the articulation of its necessity for the military community. Accordingly, consistent with a long line of decisions from this Court,[7] we reject appellant's argument that its prosecution under Article 134, UCMJ, is unlawful in light of the law of civilian jurisdictions.

A second and more subtle challenge to the propriety of this conviction under Article 134, UCMJ, is raised in the appellant's brief. There he contends that since Congress, in enacting the Uniform Code of Military Justice, did not provide for the prosecution of negligent homicide by a service member, Congress intended that only the homicide offenses of murder and manslaughter be prosecuted in military courts under Articles 118 and 119, UCMJ, respectively,[8] and that no other homicide offenses were intended to be criminally punished. As the offense of homicide produced by simple negligence does not embrace a prima facie case under either of these two codal provisions, charging it under Article 134, UCMJ, is a product of unauthorized Presidential and judicial legislation. Conse-

---

5. *See United States v. Kirchner,* 1 U.S.C.M.A. 477, 478, 4 C.M.R. 69, 70 (1952). *See generally* Zoghby, *Is There a Military Common Law of Crimes?* 27 Mil.L.Rev. 75, 90–91 (January 1965).

6. *See also Manual for Courts-Martial, United States, 1969 (Revised edition):* Appendix 12, Table of Commonly Included Offenses for Articles 118–19; Appendix 6c, sample specification 154; para. 213*f* (12); para. 127*c,* Table of Maximum Punishments, under Article 134; *Manual for Courts-Martial, United States, 1951:* Appendix 12, Table of Commonly Included Lesser Offenses for Articles 118–19; Appendix 6c, sample specification 144; para. 198b; para. 127(c), Table of Maximum Punishments for Article 134.

7. *United States v. Romero,* 1 M.J. 227 (C.M.A. 1975); *United States v. Bryan,* 19 U.S.C.M.A. 184, 41 C.M.R. 184 (1970); *United States v. Greenfeather,* 13 U.S.C.M.A. 151, 32 C.M.R. 151 (1962); *United States v. Russell,* 3 U.S.C.M.A. 696, 14 C.M.R. 114 (1954); *United States v. Kirchner, supra; United States v. Clark,* 1 U.S.C.M.A. 201, 2 C.M.R. 107 (1952); *United States v. Roman,* 1 U.S.C.M.A. 244, 2 C.M.R. 150 (1952).

8. The genesis of such an interpretation of the intent of Congress in enacting these particular provisions of the UCMJ rests on the legal maxim of statutory construction: "Expressio unius est exclusio alterius." *See* Sutherland, *Statutes and Statutory Construction,* § 47.23 (4th ed. Sands 1973).

quently, he argues that such a prosecution is without legal effect. *See* U.S.Const. art. I, § 8.

■ The keystone of such an argument lies in the doctrine of preemption first mentioned by this Court in *United States v. Norris,* 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953). Simply stated, preemption is the legal concept that where Congress has occupied the field of a given type of misconduct by addressing it in one of the specific punitive articles of the code, another offense may not be created and punished under Article 134, UCMJ, by simply deleting a vital element. *See United States v. Wright,* 5 M.J. 106, 110–11 (C.M.A.1978). However, simply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. *United States v. Maze,* 21 U.S.C. M.A. 260, 262–63, 45 C.M.R. 34, 36–7 (1972). In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way. *United States v. Maze, supra; United States v. Taylor,* 17 U.S.C.M.A. 595, 38 C.M.R. 393 (1968). *See also United States v. Wright, supra.*

■ It is clear in the present case that the appellant was found guilty of negligent homicide under Article 134, UCMJ, and not murder under Article 118, UCMJ, or manslaughter under Article 119, UCMJ. Our review of the legislative history of the latter two codal provisions indicates that their intended purpose was to simply clarify these two particular crimes as a matter of military law.[9] We do not agree that the legislative history of these provisions indi-cates a clear intent to cover all homicides to the extent of eliminating negligent homicide as an offense under Article 134, UCMJ, the present general disorder prohibition.[10] Negligent homicide prior to the enactment of the UCMJ was treated as a lesser included offense to murder and manslaughter[11] and prosecuted under the 96th Article of War as a general neglect or disorder.[12] It is reasonable to assume that Congress was aware of the existence of such military law when performing its constitutional task to make laws for the armed forces. *See United States v. Taylor, supra* at 597, 38 C.M.R. at 395. Accordingly, special reasons existed for not mentioning or treating negligent homicide in conjunction with murder or manslaughter in these provisions of the Code. *See* Sutherland, *Statutes and Statutory Construction,* § 47.23 (4th ed. Sands 1973). Moreover, in light of our decision in *United States v. Kirchner, supra,* Congress could have affirmatively acted in the formulation of the 1968 amendments to the Code to eliminate negligent homicide as a criminal offense if it so desired. We are extremely reluctant to conclude that Congress intended these provisions to preempt this offense from the spectrum of punishable criminal homicides in the absence of a clear showing of a contrary intent either in the language of these codal provisions or their legislative history. *See United States v. Taylor, supra* at 597, 38 C.M.R. at 395. Such a result is again consistent with our treatment of this criminal offense throughout the Court's history.[13] Accordingly, we find such an argument as to the granted issue without merit.

9. *See Index and Legislative History, Uniform Code of Military Justice* (Washington, D. C. 1950), Hearings before a Subcommittee of the House Armed Services Committee on H.R. 2498, 81st Congress, 1st Session, pages 1231–32, 1240–50.

10. In addition, the legislative history of Article 134, UCMJ, indicates that Congress intended this codal provision to allow prosecution of the disorder offenses previously punishable under the 96th Article of War. See Index, *supra* at 1235–38.

11. *See* footnote 5, *supra,* and para. 180a, Manual for Courts-Martial, United States Army 1949; and Manual for Courts-Martial, U. S. Air Force, 1949.

12. Paragraph 127c, Table of Maximum Punishments; Appendix 4, sample form 163, Manuals, *supra.*

13. *See* footnote 7, *supra.*

## II

 The second issue granted for review by this Court is whether the military judge erred to the substantial prejudice of the appellant by failing to give a limiting instruction *sua sponte* to the court members regarding evidence of the appellant's previous uncharged misconduct. *See United States v. Grunden,* 2 M.J. 116 (C.M.A.1977); *United States v. Bryant,* 12 U.S.C.M.A. 111, 30 C.M.R. 111 (1961). In our estimation the consumption of beer by a service member off duty, whether on or off base, is not generally a criminal offense nor can it fairly be characterized as uncharged misconduct. Paragraph 138*g,* Manual for Courts-Martial, United States, 1969 (Revised edition). Therefore, as to these incidents described by his unit commander, we see no need for a limiting instruction of this nature. As for the arrest for disorderly conduct and the previous punishment for a five-day unauthorized absence, we do not believe the failure of the military judge to instruct as to the use of evidence of uncharged misconduct rises to the level of prejudicial error, since these incidents demonstrate no general predisposition to commit the offense of negligent homicide. *See United States v. James,* 5 M.J. 382, 383 (C.M.A.1978). Finally, the complete testimony of the unit commander clearly indicates that though the appellant purportedly had been drinking prior to his arrest on the disorderly conduct charge, he was only a passenger in the vehicle which originally had been stopped for operation in an unsafe manner. Accordingly, we find any evidentiary inference arising from such a circumstance to be tenuous, and in light of the character evidence instruction given by the military judge, no prejudice could have inured to the appellant.

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

PERRY, Judge (dissenting):

The appellant contends before us that homicide through simple negligence[1] —which he points out is the standard of

---

1. Paragraph 213*f*(12), Manual for Courts-Martial, United States, 1969 (Revised edition), in discussing negligent homicide charged under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, defines that term as follows:

 [Negligent homicide] is any unlawful homicide which is the result of simple negligence. Simple negligence is a lesser degree of carelessness than culpable negligence. See 198*b.* It is the absence of due care, that is, an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care for the safety of others which a reasonably prudent man would have exercised under the same or similar circumstances.

 "Simple negligence" as thus defined is comparable to "ordinary negligence," *see* 65 C.J.S. Negligence § 1(13), which has been elsewhere "defined as the failure to exercise such care as the great mass of mankind ordinarily exercises under the same or similar circumstances," or the absence of ordinary care. *See* 57 Am. Jur.2d, Negligence, § 98. As the above-quoted Manual paragraph itself points out, it is to be distinguished from "culpable negligence," which paragraph 198*b* of the Manual, in discussing the degree of negligence required for involuntary manslaughter under Article 119, UCMJ, 10 U.S.C. § 919, defines as a degree of carelessness greater than simple negligence. It is a negligent act or omission accompanied by a culpable disregard for the foreseeable consequences to others of that act or omission. Thus, the basis of a charge of involuntary manslaughter may be a negligent act or omission which, when viewed in the light of human experience, might foreseeably result in the death of another, even though death would not, necessarily, be a natural and probable consequence of the act or omission.

 Acts which may amount to culpable negligence are negligently conducting target practice so that the bullets go in the direction of an inhabited house within range; pointing a pistol in fun at another and pulling the trigger, believing, but without taking reasonable precautions to ascertain, that it would not be dangerous; and carelessly leaving poisons or dangerous drugs where they may endanger life.

 While definitions of culpable negligence vary among jurisdictions, it has been denominated as gross negligence and it constitutes such a departure from conduct of ordinarily careful and prudent men as to reflect indifference to the consequences. It is more than ordinary negligence, more than lack of ordinary care. *See* 65 C.J.S., *supra,* § 1(13). *See also* 57 Am.Jur.2d, *supra,* § 99.

negligence under which he was convicted[2] —is not an offense under the Uniform Code of Military Justice.[3] I agree and, therefore, must dissent from the majority opinion.

The area of homicide is addressed with considerable specificity in Articles 118, Murder, and 119, Manslaughter, of the Code.[4] However, homicide through a degree of negligence less than culpable is not included therein. Instead, the military services have prosecuted homicide through simple negligence by the vehicle of Article 134.[5] Whether this use of the general article, as Article 134 justifiably has come to be known, is a proper one was first frontally addressed by the Court in *United States v. Kirchner,* 1 U.S.C.M.A. 477, 478, 4 C.M.R. 69, 70 (1952), where the Court held:

> Considering the problem solely from the standpoint of the language of these two phrases ["prejudice of good order and discipline" and "discredit upon the armed forces"] taken from Article 134, supra, we entertain no doubt of the fundamental propriety of punishing thereunder a killing resulting from simple negligence in the handling of firearms.

The Court found that this view was buttressed by the recognition of it in the Manual for Courts-Martial, United States, 1951, as a less serious offense than involuntary manslaughter; by the recognition of it as an offense in previous opinions of the Court (citing *United States v. Roman,* 1 U.S.C.M.A. 191, 2 C.M.R. 150 (1952), and *United States v. Clark,* 1 U.S.C.M.A. 201, 2 C.M.R. 107 (1952), both of which involved homicide through simple negligence but neither of which addressed the question whether it properly was an offense cognizable under the general article); and by prior holdings of Army and Air Force boards of review recognizing that negligent homicide, requiring a degree of negligence less than gross or culpable, is an offense under the general article.

Significantly, however, the Court in *Kirchner* made no reference, nor gave any consideration, to the doctrine of preemption—

2. The military judge instructed the court members that to convict the appellant of the charged offense of negligent homicide, they must find that his actions constituted simple negligence, and he defined "simple negligence" for them in terms of paragraph 213*f*(12), Manual, *supra. See* n. 1, *supra.*

3. Additionally, we granted review of the appellant's allegation that the military judge at his court-martial committed prejudicial error by failing to instruct the court members, *sua sponte,* concerning the limited purpose for which evidence of other, uncharged misconduct was admitted. Because of my position on the first issue, however, I need not resolve this claim.

4. § 918, Art. 118. Murder.
 Any person subject to the chapter who, without justification or excuse, unlawfully kills a human being, when he—
 (1) has a premeditated design to kill;
 (2) intends to kill or inflict great bodily harm;
 (3) is engaged in an act which is inherently dangerous to others and evinces a wanton disregard of human life; or
 (4) is engaged in the perpetration or attempted perpetration of burglary, sodomy, rape, robbery, or aggravated arson;
 is guilty of murder, and shall suffer such punishment as a court-martial may direct, except that if found guilty under clause (1) or (4), he shall suffer death or imprisonment for life as a court-martial may direct.
 § 919, Art. 119. Manslaughter.
 (a) Any person subject to this chapter, who, with an intent to kill or inflict great bodily harm, unlawfully kills a human being in the heat of sudden passion caused by adequate provocation is guilty of voluntary manslaughter and shall be punished as a court-martial may direct.
 (b) Any person subject to this chapter who, without an intent to kill or inflict great bodily harm, unlawfully kills a human being—
 (1) by culpable negligence; or
 (2) while perpetrating or attempting to perpetrate an offense, other than those named in clause (4) of section 918 of this title (article 118), directly affecting the person;
 is guilty of involuntary manslaughter and shall be punished as a court-martial may direct.

5. § 934, Art. 134. General article.
 Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

the concept that the Congress has preempted the field of a given type of misconduct by addressing it in one of the specific punitive articles of the Code and that another offense cannot be created and punished under the general article simply by deleting a vital element. First mention of this theory by the Court was in *United States v. Norris*, 2 U.S.C.M.A. 236, 8 C.M.R. 36 (1953). Initially, the *Norris* Court observed: [6]

> In discussing the Code during Senate Subcommittee hearings, Professor Morgan commented that "we have made specific several offenses which were previously punishable under the general article." He added that it was the intent of the drafters to specifically define the nonmilitary offenses and leave the general article "pretty much only for military offenses." [7] Hearings before Senate Committee on Armed Services on S. 857 and H.R. 4080, 81st Congress, 1st Session (1949), pages 37, 47.

Thereupon, the Court concluded: [8]

> It is our view that, in accordance with the remarks of Professor Morgan, quoted earlier, Article 134 should generally be limited to military offenses and those crimes not specifically delineated by the punitive Articles. See Winthrop's Military Law and Precedents, 2d ed., 1920 Reprint, page 720. As the Manual itself notes, there is scarcely an irregular or improper act conceivable which may not be regarded as in some indirect or remote sense prejudicing military discipline under Article 134. Manual for Courts-Martial, United States, 1951, page 381. We cannot grant to the services unlimited authority to eliminate vital elements from common law crimes and offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134.

This doctrine was spoken to most recently by this Court in *United States v. Wright*, 5 M.J. 106, 110–11 (C.M.A.1978), where we stated:

> *Norris* stressed, as have later opinions on the subject, that the applicability of the preemption doctrine requires an affirmative answer to two questions. The primary question is whether Congress intended to limit prosecution for wrongful conduct within a particular area or field to offenses defined in specific articles of the Code; the secondary question is whether the offense charged is composed of a residuum of elements of a specific offense and asserted to be a violation of either Articles 133 or 134, which, because of their sweep, are commonly described as the general articles.

I believe that the Congress manifested its intent to preempt the field of homicide in the military by its enactment of the detailed specific Articles 118 and 119.[9] After reiterating its conclusion in *Norris* concerning the limitation on the coverage of Article 134, the Court in *United States v. McCormick*, 12 U.S.C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960), opined:

> That such is a sound construction of Article 134 is beyond doubt. The statute expressly excepts from its coverage conduct "not specifically mentioned in this chapter" and each of the general articles which preceded it, ranging backward through history to those extant in the British Army, were similarly intended only "to provide a general remedy for wrongs not elsewhere provided for." Winthrop, supra, page 725.

By enacting Articles 118 and 119 of the 1951 and 1968 Codes, the Congress specifically proscribed *every* degree of homicide except one: homicide through simple negligence. Had it intended to punish such conduct, it would have been a simple matter to

**6.** *United States v. Norris,* 2 U.S.C.M.A. 236, 239, 8 C.M.R. 36, 39 (1953).

**7.** To the extent that the "disorder offenses" addressed in footnote 10 of the majority opinion extend to nonmilitary-type disorders of routine civilian nature, such as homicide through simple negligence, Professor Morgan's comment refutes the "legislative history" referenced in that footnote.

**8.** *United States v. Norris, supra* at 239, 8 C.M.R. at 39.

**9.** *See* note 4, *supra.*

have included it in this otherwise completely comprehensive statutory scheme. Instead, I infer that its omission under these circumstances was intentional. *Expressio unius est exclusio alterius.* Where the Congress has not proscribed certain conduct, either specifically or through its intent behind the general article, it is not for the President to do so through the Manual for Courts-Martial, nor for this Court to do so through acquiescence to prosecutorial initiative. What Judge Ferguson said in *McCormick* bears repeating: [10]

Nor is there any basis for the proposition that the President may create an offense under the Code. To the contrary, our forefathers reposed in the Congress alone the power "To make Rules for the Government and Regulation of the land and naval Forces." United States Constitution, Article 1, Section 8. The President's power as Commander-in-Chief does not embody legislative authority to provide crimes and offenses. See Crosskey,

Politics and the Constitution, 423–425 (1953); concurring opinion of Mr. Justice Harlan, *Reid v. Covert,* 354 U.S. 1, 68, 1 L ed 2d 1148, 77 S.Ct. 1222 (1957). And in this area under the Code, the Executive's authority has expressly been limited to the authority to prescribe rules of evidence and procedure and maximum limits upon the punishments which a court-martial may direct. Code, supra, Articles 36, 56, 10 USC §§ 836, 856. See also *United States v. Symonds,* 120 U.S. 46, 30 L ed 557, 7 SCt 411 (1887), and *Hirshberg v. Cooke,* 336 U.S. 210, 69 S.Ct. 530, 93 L ed 621 (1949).

For the foregoing reasons, I conclude that homicide through simple negligence may not be made an offense under the general article of the Code simply by deleting the culpable aspect of the negligence of concern in Article 119(b)(1).[11] I would reverse the conviction.

---

10. *United States v. McCormick,* 12 U.S.C.M.A. 26, 28, 30 C.M.R. 26, 28 (1960).

11. I am aware of the argument that

[t]here is a special need in the military to make the killing of another as a result of simple negligence a criminal act. This is because of the extensive use, handling and operation in the course of official duties of such dangerous instruments as weapons, explosives, aircraft, vehicles and the like. The danger to others from careless acts is so great that society demands protection.

*United States v. Ballew,* CM 434077 (unpublished), p. 2 (A.C.M.R.1976). Yet, this does not point out any special need for proscribing homicide through *simple* negligence, for misuse

of such dangerous instruments in the military setting likely would rise to the level of *culpable* negligence (see examples of "culpable negligence" discussed in paragraph 198*b,* Manual, *supra* ), if, indeed, there was any negligence at all in a given case. In any event, I do not say here that the Congress *could* not include homicide through simple negligence in the Code (*but see* 57 Am.Jur.2d, Negligence, § 96; 65 C.J.S. Negligence § 1(13); Perkins, *Criminal Law,* 65 and 68 (1957) (concerning the level of negligence appropriate to attach criminal liability); I only say that it did not, and to whatever extent the military services perceive a need for it in the military justice system, their recourse is entirely legislative.