# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
ALDYKIEWICZ, SALUSSOLIA, and WALKER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Chief Warrant Officer Two RYAN D. MCDONALD**
**United States Army, Appellant**

ARMY 20180387

Headquarters, Fort Drum
Teresa L. Raymond, Military Judge
Lieutenant Colonel Jennifer Neuhauser, Staff Judge Advocate

For Appellant: Captain Alexander N. Hess, JA (argued); Lieutenant Colonel Tiffany D. Pond, JA; Major Julie L. Borchers, JA; Captain Alexander N. Hess, JA (on brief); Lieutenant Colonel Tiffany D. Pond, JA; Major Kyle C. Sprague, JA; Captain Alexander N. Hess, JA (on reply brief).

For Appellee: Captain Brian Jones, JA (argued); Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Craig Schapira, JA; Captain Brian Jones, JA (on brief).

31 March 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WALKER, Judge:

Appellant submits that Article 120b(c), Uniform Code of Military Justice, 10 U.S.C. § 920b (2016) [UCMJ] —which prohibits committing lewd acts upon a child including communicating indecent language—preempts the enumerated Article 134, UCMJ, offense of indecent language to a child. Therefore, appellant argues he could not be convicted of attempting to communicate indecent language in violation of Article 134.[1]

---

[1] In addition to his briefed allegations of error, appellant personally submitted

(continued . . .)

MCDONALD—ARMY 20180387

For the reasons discussed below, we find that appellant's conviction for attempted indecent language under Article 134 was preempted by Article 120b(c).[2]

## I. BACKGROUND

Appellant's desire for sexual encounters with young teenage females led him to the dark corners of the ever popular Craigslist website. Appellant responded to a Craigslist advertisement posted by an individual who claimed to be the father of two fourteen-year-old daughters that he wanted "educated." Appellant expressed his willingness to engage in sexual intercourse with the poster's two teenage daughters and agreed to chat the following day. Unbeknownst to appellant, he was actually communicating with an undercover law enforcement officer.

The next day appellant communicated with the undercover officer posing as the teens' father about meeting to discuss a sexual encounter with the fictitious teens. Appellant agreed to meet the undercover officer at the Post Exchange (PX), but ultimately fled the area without following through on the meeting when he noticed police in the PX parking lot.

After the failed meeting, law enforcement provided appellant with a contact number for "Nikki," whom he believed to be a teenage female. Appellant began texting directly with "Nikki." During one text exchange appellant attempted to get "Nikki" to masturbate by directing her, "Play with yourself now," and "Stick your finger inside you." The following day appellant told "Nikki" to "get naked." A few days later while texting "Nikki" to make arrangements to meet, appellant asked "want to have sex?" He was apprehended by law enforcement a few days later.

The government charged appellant with attempted sexual abuse of a child in violation of Article 120b, UCMJ, by committing a lewd act with someone he believed to be a child when he communicated indecent language in his text

---

(. . . continued)

additional matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). We have given these matters full and fair consideration and find them to be without merit.

[2] A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of attempted sexual abuse of a child, three specifications of attempted communication of indecent language to a child, one specification of larceny, and one specification of presenting a false claim, in violation of Articles 120b, 121, 132, and 134, UCMJ.

messages: "get naked," and "want to have sex?"[3] In the alternative, appellant was also charged with attempted communication of indecent language in violation of Article 134, UCMJ, for the same text messages. Appellant was convicted of attempting to communicate indecent language in violation of Article 134, UCMJ.

The Article 134 specification at issue, Specification 5 of Charge I, alleges that appellant:

> did, at or near Fort Drum, New York, between on or about 23 February 2017 and on or about 27 February 2017, attempt to communicate in writing to a person whom he believed to be a child who had attained the age of 12 years, but had not attained the age of 16 years, certain indecent language, to wit: "get naked" and "wanna have sex?", or words to that effect, such conduct being of a nature to bring discredit upon the armed forces.

## II. LAW AND DISCUSSION

Preemption is an issue of "statutory interpretation, which is a question of law we review de novo." *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018). The President implemented the preemption doctrine prohibiting the "application of Article 134 to conduct covered by Articles 80 through 132." *Manual for Courts-Martial, United States* (2016 ed.) [*MCM*], pt. IV, ¶ 60.c.(5)(a). The doctrine is "designed to prevent the government from eliminating elements from congressionally established offenses under the UCMJ, in order to ease [its] evidentiary burden at trial." *United States v. Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *4 (C.A.A.F. 27 Feb. 2020) (quoting *Wheeler*, 77 M.J. at 293).

The primary question in determining whether the preemption doctrine precludes charging an offense under Article 134, UCMJ, is whether "Congress intended to limit prosecution for wrongful conduct within a particular area or field to those offenses defined in the specific articles of the Code." *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *4 (quoting *United States v. Curry*, 35 M.J. 359, 360-61

---

[3] Specifications 4 and 6 of Charge I (attempted indecent language) were charged in the alternative to Specifications 1 and 3 of Charge I (attempted sexual abuse of a child by committing a lewd act), each pair of specifications charging the same language. After findings but prior to sentencing, the military judge conditionally dismissed Specifications 4 and 6 of Charge I. Ultimately, he found appellant guilty of Specifications 1 and 3 (attempted sexual abuse of a child in violation of Article 120b, UCMJ). Therefore, the only specification which implicates the preemption doctrine is Specification 5 of Charge I (attempted indecent language).

(C.M.A. 1992)).  The secondary question is whether "the offense charged is composed of a residuum of elements of a specific offense."  *Id*.

The preemption doctrine applies when an offense charged under Article 134, UCMJ, lacks an element of an enumerated offense and Congress "intended [the enumerated offense] to cover a class of offenses in a complete way."  *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010) (quoting *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979)).  Congressional intent to preempt Article 134 must be conveyed "through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article."  *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *4 (quoting *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010)).

When Congress revised Article 120, UCMJ, in 2011, it shifted all child sexual offenses into the newly enacted Article 120b, which includes a prohibition against committing lewd acts upon children.  National Defense Authorization Act for Fiscal Year 2012, Pub. L. No. 112-81 (2011).  A lewd act includes "intentionally communicating indecent language to a child by any means, including via any communication technology, with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person."  UCMJ art. 120b(c), (h)(5)(C).

The creation and development of Article 120b seems to indicate that Congress intended to cover sexual misconduct with children in a complete way.  *See Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *9 (the court acknowledging that the minimal legislative history of Article 120b(c) suggests "*at most*" a congressional intent "to occupy the field as to misconduct characterized as sexual offenses against children.").  However, there is no direct legislative language stating that intent.  There is also no support for appellant's argument that Congress intended to broadly "occupy either the entire field of misconduct involving children or indecent language generally."  *Avery,* __ M.J. __, 2020 CAAF LEXIS 151, at *9.

The secondary question we consider when presented with a preemption issue is whether the offense of indecent language under Article 134, UCMJ, "is composed of a residuum of elements" of sexually abusing a child by committing a lewd act as defined in Article 120b, UCMJ.  *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *4 (quoting *Curry*, 35 M.J. at 360-61).  A review of the elements, without more, might lead to the conclusion that Article 134, indecent language, is nothing more than "a residuum" of the elements of Article 120b.  *Id.* at *7.  The only difference between the two offenses is the intent element outlined in Article 120b(c), UCMJ.  *Id*.  Article 120b(c) requires "an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person."  UCMJ art. 120b(c), (h)(5)(C).  Indecent language under Article 134 has no such element.  Such a conclusion, however, disregards the scope and reach of that prohibited by Article 134.

4

"The scope of indecent language prohibited under Article 134, UCMJ, extends well beyond that language that constitutes the lewd acts with children with which Article 120b(c) is concerned." *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *8. Article 134 criminalizes two classes of indecent language: that which is grossly offensive because it is (1) "vulgar, filthy, or disgusting;" and (2) that which is grossly offensive as it tends to "incite lustful thoughts." *Id.* (citing *United States v. Green*, 68 M.J. 266, 269 (C.A.A.F. 2010)). The first class involves language that is not sexual in nature but still criminally indecent if it violates community standards. *See id.* (citations omitted). Communicating language of this class does not constitute a lewd act as defined in Article 120b because it may not be spoken with the specific intent to abuse, humiliate, or degrade any person, or arouse or gratify the sexual desire of any person.

"Because there is a class of indecent language communicated to a child that is, according to community standards, grossly offensive or shocks the moral sense because of its vulgar, filthy or disgusting nature, yet that is not sexual—and thus not, without more a lewd act—Article 134, UCMJ is not merely a residuum of Article 120b, UCMJ."[4] *Id.* (internal quotations and citations omitted).

In *United States v. Avery*, the indecent language in question arose from a "name-calling duel" between an adult service member and a child. *Id.* at n.1. Noting the importance of the context of the language, our superior court found that the offense of indecent language under Article 134 was not preempted by Article 120b because the indecent language communicated was "simply not a sexual act or lewd act as contemplated by Article 120b(c), h(5)(C)." __ M.J. __, 2020 CAAF LEXIS 151, at *10. It was indecent language, but not because it was of a sexual nature.

In a footnote, the court left "for another day the question whether Article 120b, UCMJ, may preempt Article 134, UCMJ, insofar as it targets language that is 'grossly offensive . . . because of . . . its tendency to incite lustful thought." *Id.* at n.7. The charged language in the case before us presents that exact question which we answer in the affirmative. We hold that Article 120b preempts Article 134 with regard to indecent language of a sexual nature communicated to a child, that is, language that is grossly offensive because it tends to incite lustful thought.

The indecent language appellant communicated to a person he believed to be a fourteen-year-old girl was inherently sexual in nature. When appellant told "Nikki" to "get naked" and asked, "want to have sex?," these

---

[4] We will not consider the terminal element of Article 134, UCMJ, as neither did our superior court in conducting its analysis on the same issue. *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *7.

communications were sent in the context of appellant seeking to meet her to engage in sexual acts. The language was clearly calculated to "incite lustful thought" and constituted a lewd act as defined in Article 120b(c), in that it was intended to "gratify the sexual desire of any person." The language was indecent because it was motivated by appellant's desire to incite lustful thought, not because either phrase was particularly vulgar, filthy, or disgusting. This is exactly the type of lewd act toward a child that Congress sought to prohibit in Article 120b(c).

Because of the two different classes of indecent language Article 134 encompasses, it is not always preempted by Article 120b(c). *Avery*, __ M.J. __, 2020 CAAF LEXIS 151, at *11. However, we find that Congress intended Article 120b(c), UCMJ, to occupy the field of sexual misconduct offenses against children. Accordingly, we hold that under the facts of this case, Article 120b(c) preempts the charged attempted Article 134 offense of indecent language.

## CONCLUSION

In light of our determination that Specification 5 of Charge I is preempted and thereby fails to state an offense, we set the specification aside and consider the appropriateness of appellant's sentence. We are able to reassess the sentence and do so after consideration of the entire record and in accordance with the principles articulated by our superior court in *United States v. Sales*, 22 M.J. 305, 307-08 (C.M.A. 1986), and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013).

Setting aside Specification 5 of Charge I reduces the potential maximum sentence to confinement from forty-seven to forty-five years, an insignificant change in the penalty landscape, especially considering the adjudged sentence of seven months confinement. Appellant elected to be tried by a military judge alone, weighing in favor of our ability to reassess the appropriateness of his sentence. Most importantly, we find the remaining offenses capture the gravamen of appellant's criminal conduct. We are familiar with the remaining offenses such that we may reliably determine what sentence would have been imposed at trial.

We are confident the fact finder would have sentenced appellant to be confined for seven months and dismissed from the service, even without the set-aside specification. We find appellant's sentence of confinement for seven months and dismissal from the service to be appropriate.

The finding of guilty of Specification 5 of Charge I is SET ASIDE and DISMISSED. The remaining findings of guilty are AFFIRMED. The sentence is AFFIRMED. All rights, privileges, and property, of which appellant has been

deprived by virtue of that portion of the findings set aside by this decision are ordered restored.

Senior Judge ALDYKIEWICZ and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court