**UNITED STATES, Appellee**

v.

**Specialist Five Michael R. WATKINS,
SSN 121–48–3043, United States
Army, Appellant.**

**SPCM 17352.**

U. S. Army Court of Military Review.

18 Oct. 1982.

Captain Peter R. Huntsman, JAGC, argued the cause for the appellant. With him on the brief was Major Robert C. Rhodes, JAGC.

Captain John J. Park, Jr., JAGC, argued the cause for the appellee. With him on the brief were Colonel R.R. Boller, JAGC, Major John T. Edwards, JAGC, and Captain Kenneth H. Clevenger, JAGC.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

O'DONNELL, Senior Judge:

The appellant was convicted, *inter alia,* of resisting apprehension and wrongfully possessing, transferring and selling hashish, in violation of Articles 95 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 895 and 934 (1976), respectively.[1] He was sentenced to a bad-conduct discharge, confinement at hard labor and partial forfeitures for six months, and reduction to Private E–1. In accordance with a pretrial agreement, the convening authority reduced the confinement and forfeitures to three months, and approved the remainder of the sentence as adjudged.

The appellant first contends that the evidence is insufficient to establish his guilt of the hashish offenses. We agree as to the

---

1. The appellant was charged with wrongfully possessing, transferring, and selling hashish on two separate occasions on 25 September 1981. He was also charged with wrongfully possessing hashish on 1 October 1981.

possession but not as to the remaining offenses.

During the afternoon of 25 September 1981, Specialist Four Kenneth Browder, an undercover agent for the local drug suppression team, and an unnamed confidential informant met the appellant and Specialist Whitlock in order to purchase drugs. They retired to a room in the appellant's barracks where the appellant produced several small packages of hashish and sold one of them to Browder. After Whitlock left, the appellant told Browder and the informant that if they "wanted some bigger pieces and some 'red' that—to come by this evening . . . and that Whitlock would have some." Browder did as advised and bought a quantity of hashish. The appellant was not present at this transaction.

As to the first transaction, the evidence clearly shows that the appellant wrongfully possessed, transferred and sold the hashish. As to the second transaction, we are convinced that the appellant, in his crucial role as a go-between, aided and abetted Whitlock in the sale and transfer of the hashish and was liable as a principal even though he was not present at the scene. See United States v. Burroughs, 12 M.J. 380, 382–83 (CMA 1982); United States v. Wampler, 44 C.M.R. 638 (ACMR 1971). However, the appellant never possessed the hashish, nor did he act as an aider or abettor or counsel or encourage Whitlock to possess it. The appellant's concern and actions were limited to the sale and transfer of the hashish. Therefore, his conviction for its possession cannot stand. See United States v. McMurry, 6 M.J. 348 (CMA 1979).

The appellant next contends that his plea of guilty to resisting apprehension was not provident because his statements during the inquiry into his plea, together with a stipulation of fact, reveal that his actions did not amount to resistance or, in the alternative,

that he instead attempted to escape from custody.

To determine this issue, we must examine the proceedings in several discrete phases. First, there is a stipulation of fact which was introduced by the Government. The stipulation provides pertinently: "After being told he was under apprehension by Military Policeman Campbell and during the process of the apprehension, the accused grabbed his field jacket, turned sharply away and had to be physically restrained by the military police." This statement is ambiguous. Although it appears that the parties intended to convey the conclusion that an apprehension had not been effected, it can be read for precisely the opposite. As the Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 19 c, provides: "An apprehension is effected by clearly notifying the person to be apprehended that he is thereby taken into custody."

Further discrepancies in this case arose when the appellant attempted to provide his version of the event. Initially, he related that when he arrived at his place of duty, he was met by the two military policemen, one of whom told the appellant to come with him. One of the military policemen also informed the appellant that "they were coming to get [him] for something that happened on the 25th of September."[2] He did not, however, recall whether the policeman informed him that he was under apprehension. After the appellant arrived at the office with the policemen, one of the policemen started to search the appellant's field jacket, which was on a chair. The appellant, aware that the jacket contained hashish, grabbed it and attempted to flee. The appellant said that about five to ten minutes elapsed after they arrived at the office before he snatched his jacket. At this point, the military judge announced that it appeared that the appellant had already been apprehended and that the offense was attempted escape from custody

2. As noted previously, the appellant was charged with wrongfully possessing, transfer-

ring and selling hashish on 25 September 1981.

rather than resisting apprehension.[3] He then pointed out to the appellant that the stipulation provided that the military police advised him he was under apprehension. The judge again asked the appellant if he recalled being so advised. At this point, the judge granted the defense request for a recess.

When the hearing resumed twenty-six minutes later, the appellant continued with his version of the incident. He did not respond directly to the judge's question as to whether the police advised him that he was under apprehension. Instead, he related that when he first met the police, one of them stated, "Come with me down to the office." When he got to the office, the appellant continued, one of the policemen started to say something, at which time the appellant grabbed his jacket and attempted to leave. The judge then asked the appellant if he thought when the police first spoke to him that an apprehension was being effected or that he was just being escorted down the hallway. The appellant replied, "I thought that they were coming to get me because I had—got hash in my pocket." The judge again asked the appellant if he thought he was being apprehended when the police told him to come with them. The appellant answered yes. The military judge again announced that it appeared that the appellant was in custody at that point. He then recessed the court for twenty-two minutes to research the issue.

When the hearing resumed, the following duologue took place:

MJ: Specialist Watkins, when ah—Sergeant Campbell told you to come to the office with him, what did you think was going on?

ACC: I didn't know. I just thought that maybe he wanted some papers or something.

MJ: Did you have any idea that he was going to put you under apprehension?

ACC: No, Sir.

MJ: How about when you grabbed the coat and tried to leave?

ACC: I thought he was.

The military judge proceeded no further on that specification and shortly thereafter accepted the appellant's plea of guilty.

Article 45(a) of the Uniform Code of Military Justice, 10 U.S.C. § 845(a) provides: "If an accused ... after a plea of guilty sets up matter inconsistent with the plea, ... a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." The reason for this provision, of course, is that an accused who sets up matters inconsistent with his plea may not understand the meaning and effect of his plea. To insure that this does not occur, the Court of Military Appeals directed a procedure whereby the military judge must satisfy himself that the accused is pleading guilty with full knowledge of its meaning and effect. In *United States v. Care,* 18 U.S.C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969), the Court held that the judge must not only explain the elements of the offense but must also question the accused "about what he did or did not do, and what he intended (where this is pertinent), to make clear the basis for a determination by the military trial judge ... whether the acts or the omissions of the accused constitute the offense or offenses to which he is pleading guilty."

■ In the instant case, the flow of inconsistencies in the appellant's rendition indicates that he did not understand the nature of the offense to which he was pleading guilty. His overall version of the incident supports a conclusion that he was already in custody when he attempted to flee. This is consistent with an attempted escape from custody rather than the offense of resisting apprehension. His later statements, it is true, do tend to lend support to the latter offense. But his statements as a whole reveal confusion on his part which required the military judge to inquire further into the appellant's understanding of the issues involved. Under these circum-

3. The appellant was also charged with attempted escape from custody. He was acquitted of that offense after the military judge accepted the appellant's plea to resisting apprehension.

stances, *Care* demands more than merely proceeding to the point where an accused makes a statement consistent with his pleas without resolving the previous inconsistencies. As the Court of Military Appeals noted in *United States v. Thompson,* 21 U.S.C. M.A. 526, 528, 45 C.M.R. 300, 302 (1972), the "words of [Article 45] manifest a congressional intent that guilt be acknowledged consistently from the plea through the sentence." It is not the last word that controls. Rather, it is the statements of the accused as a whole that must be examined to determine whether his plea is provident. Such an examination in this case reveals an improvident plea.

One other matter requires consideration. In *United States v. Felty,* 12 M.J. 438, 441–42 (CMA 1982), the Court of Military Appeals held that the accused's plea of guilty to escape from custody was provident even though the *Care* inquiry revealed that the offense committed was escape from confinement. In so concluding, the Court noted that the gravamen of both offenses was a throwing off of physical restraint—imposed in one case by apprehension and in the other by a confinement order. In this case, however, we must compare attempted escape from custody with resisting apprehension. The former offense involves an attempt to throw off physical restraint, while the latter is concerned with an effort to prevent the imposition of such restraint. These offenses are sufficiently different, in our opinion, to preclude reliance on *Felty.*

The findings of guilty of Specification 7, Charge I and Additional Charge II and its specification are set aside and those charges are dismissed. In view of the action of the convening authority in reducing the confinement and the forfeitures to three months, no sentence relief is appropriate. Accordingly, the remaining findings of guilty and the sentence are AFFIRMED.

Judge FOREMAN and Judge WERNER concur.