# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, CAMPANELLA, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist TYRELL L. LANGSTON**
**United States Army, Appellant**

ARMY 20120265

Headquarters, I Corps
David L. Conn, Military Judge (arraignment)
Kwasi Hawks, Military Judge (trial)
Colonel Kurt A. Didier, Staff Judge Advocate (pretrial)
Lieutenant Colonel John T. Rothwell, Acting Staff Judge Advocate
(recommendation)
Colonel William R. Martin, Staff Judge Advocate (addendum)

For Appellant:  Lieutenant Colonel Imogene M. Jamison, JA; Major Jacob D. Bashore, JA; Captain Brian J. Sullivan, JA (on brief).

For Appellee:  Lieutenant Colonel James L. Varley, JA; Major Katherine S. Gowel, JA; Captain Sean P. Fitzgibbon, JA (on brief).

28 February 2014

---------------------------------
SUMMARY DISPOSITION
---------------------------------

HAIGHT, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of six specifications of failure to go to his appointed place of duty, two specifications of going from his appointed place of duty, two specifications of assaulting a superior noncommissioned officer, one specification of disrespect toward a noncommissioned officer, one specification of failure to obey a lawful general order, two specifications of resisting apprehension, one specification of making a false official statement, one specification of wrongful use of marijuana, one specification of assault consummated by a battery, and one specification of drunk and disorderly conduct, in violation of Articles 86, 91, 92, 95, 107, 112a, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 891, 892, 895, 907, 912a, 928, 934 [hereinafter UCMJ].  The military judge sentenced appellant to a bad-conduct discharge and confinement for six months.  The convening authority

approved the adjudged sentence and credited appellant with seventy-seven days against the sentence to confinement.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises three assignments of error, all of which merit discussion and relief, albeit not for the precise reasons appellant claims.

## DISCUSSION

*Going from Appointed Place of Duty Offenses*

In Specifications 6 and 7 of Additional Charge I, appellant was charged with, pleaded guilty to, and convicted of two counts of going without authority, on two consecutive days during the 2011 Thanksgiving weekend, "from his appointed place of duty, to wit: Joint Base Lewis-McChord, Washington." In his first assignment of error, appellant now claims the military judge abused his discretion in accepting appellant's guilty pleas to those offenses, because although the admitted facts may have satisfied the elements of the crimes of failure to go to an appointed place of duty or breaking restriction, they were insufficient for the charged offense of going without authority from an appointed place of duty. For purposes of these specifications, the government agrees "that appellant was actually guilty of breaking restriction" and that these two convictions should not be affirmed.

In the alternative, in his second assignment of error, appellant claims these same two specifications fail to state an offense, because they lack the required specificity with respect to the alleged place of duty. We first note that appellant's absence from an entire installation was not charged as absence without leave under Article 86(3), UCMJ. Instead, the government pursued conviction under Article 86(2), UCMJ. We find the appointed place of duty involved in Article 86(1) or (2), UCMJ, "refers to a specifically appointed place of duty such as kitchen police, reveille formation, or first floor of a barracks rather than a broader general place of duty such as a command, a post or a unit." *United States v. Sturkey*, 50 C.M.R. 110 (A.C.M.R. 1975).

The providence inquiry in this case reveals that appellant's "duty" and its corresponding "place of duty" during the vacation weekend in question was simply to stay on-post. In fact, the trial counsel highlighted, "Although [appellant] didn't have a specific duty to accomplish on that weekend, his place of duty, our understanding, was Joint Base Lewis-McChord, it was not that he actually had some specific duty to accomplish." In light of the above, we will disapprove the findings of guilty to Specifications 6 and 7 of Additional Charge I, rendering moot any discussion of appellant's first assignment of error.

*Resisting Apprehension Offenses*

In Specifications 1 and 2 of Charge III, appellant was charged with, pleaded guilty to, and convicted of resisting apprehension by two different military policemen (MP), MP JL and MP NW. Appellant now complains those specifications are factually the same and multiplicious.

When framed as a multiplicity issue and in light of appellant's admission during the providence inquiry that two MPs "tried to apprehend me and I resisted their authority," one is left with an initial impression that this was a case of two law enforcement officers simultaneously and jointly attempting to apprehend the appellant. This was not the case.

In the very early hours of 20 August 2011, appellant was confronted by the Assistant Staff Duty Noncommissioned Officer and Charge of Quarters Noncommissioned Officer for having a female guest in his room whom had not been signed in and was present well past visiting hours. Appellant became increasingly confrontational and combative, ultimately assaulting multiple noncommissioned officers and soldiers. Law enforcement responded.

First on the scene were MP NW and MP RL. While MP RL stood back with her military working dog, MP NW attempted to apprehend appellant. After a struggle, MP NW was able to restrain appellant on the ground and place him in handcuffs. Appellant stated he would calm down and MP NW brought appellant to his feet. Then, appellant once again became aggressive, so MP NW forcibly took appellant to the ground and there restrained him. The stipulation of fact provided that although "he was restrained on the ground," appellant continued to struggle. It is at this point in time when MP JL and MP MT arrived on the scene. MP JL assisted MP NW in calming the appellant, who was thrashing about, and the two were eventually able to once again bring the appellant to his feet and start escorting him out of the building. Appellant struggled yet again and eventually had to be tasered.

During appellant's outburst, MP NW successfully placed appellant in handcuffs, restrained him on the ground, and appellant became sufficiently compliant to allow himself to be helped up to a standing position. Appellant, therefore, had been apprehended and taken into custody at that point. *See United States v. Stone*, 13 C.M.R. 906, 909 (A.F.B.R. 1953) (concluding that "prior to the time [accused] was held to the ground and placed in handcuffs, his free locomotion had not been effectively restrained" and, therefore, he had not yet been apprehended). Here, appellant's "free locomotion" had been restrained by lawful apprehension. *See Manual for Courts-Martial, United States*, (2012 ed.) [hereinafter *MCM*], pt. IV, ¶¶ 19.c(1)(a), (4)(a). The fact that appellant continued to fight and that this post-apprehension resistant behavior could possibly have been charged as other crimes such as assault or attempted escape from custody do not alter the reality

that appellant was already apprehended before MP JL even arrived on scene. *See MCM*, pt. IV, ¶ 19.c(1)(C); *United States v. Watkins*, 14 M.J. 803 (A.C.M.R. 1982); *see also United States v. Ridgeway*, 13 M.J. 742 (A.C.M.R. 1982). Therefore, appellant, at that time, could not, as a matter of law, resist any apprehension by MP JL. Accordingly, we will set aside and dismiss Specification 1 of Charge III.

## CONCLUSION

On consideration of the entire record and the assigned errors, the finding of guilty of Specification 1 of Charge III, and the findings of guilty of Specifications 6 and 7 of Additional Charge I are set aside and those specifications are dismissed. We AFFIRM the remaining findings of guilty.

We are able to reassess the sentence on the basis of the errors noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).

In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence. The two dismissed Article 86(2), UCMJ, offenses only carried a maximum sentence of one month confinement each, and appellant remains convicted of six such offenses. Also, although one resisting apprehension conviction is set aside, one such conviction remains. Second, appellant pleaded guilty before and was sentenced by a military judge alone, and also benefitted from a pretrial agreement and its corresponding sentence limitation. Third, we find the nature of the remaining offenses captures the gravamen of the original specifications, at least with respect to the now dismissed resisting apprehension specification. Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted error and the entire record, we AFFIRM the approved sentence. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge COOK and Judge CAMPANELLA concur.

4

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court