*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————

**UNITED STATES**
Appellee

**v.**

**Robert S. AVERY, Specialist**
United States Army, Appellant

**No. 19-0259**
Crim. App. No. 20140202

January 15, 2020, Argued—Decided February 27, 2020

Military Judges: Douglas Watkins (rehearing), Timothy P. Hayes Jr., and Craig S. Denney

For Appellant: *Captain Steven J. Dray* (argued); *Colonel Elizabeth G. Marotta*, *Lieutenant Colonel Tiffany D. Pond*, *Major Jack D. Einhorn*, and *Captain Benjamin A. Accinelli* (on brief); *Major Julie L. Borchers* and *Captain Alexander N. Hess*.

For Appellee: *Captain Marc J. Emond* (argued); *Colonel Steven P. Haight*, *Lieutenant Colonel Wayne H. Williams*, and *Major Dustin B. Myrie* (on brief); *Major Sandra L. Ahinga*.

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and MAGGS, joined.

———————

Judge RYAN delivered the opinion of the Court.

This case presents the question whether Congress preempted the Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2012), enumerated offense of indecent language to a child by enacting Article 120b(c), UCMJ, 10 U.S.C. § 920b (2012), sexual abuse of a child. We hold that where the language communicated was indecent because of its "vulgar, filthy, or disgusting nature," and not because of its sexual nature, there is no indication that Congress intended Article 120b(c), UCMJ, to cover this type of misconduct and preempt Article 134, UCMJ. The granted question is answered in the negative.

## I. BACKGROUND

A general court-martial convicted Appellant, contrary to his pleas, of one specification of sexual assault of a child and one specification of indecent language to a child, violations of Articles 120b and 134, UCMJ, respectively. Appellant was acquitted of three other specifications of Article 120b, UCMJ, sexual assault of a child. He was sentenced to reduction to E-1 and a bad-conduct discharge. The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals (ACCA) affirmed the findings but set aside the sentence and authorized a rehearing in light of the military judge's denial of for cause challenges against four members. *See United States v. Avery*, No. ARMY 20140202, 2017 CCA LEXIS 739, at *14–15, *26, 2017 WL 6021317, at *5, *9 (A. Ct. Crim. App. Nov. 30, 2017). On rehearing, a military judge sitting alone sentenced Appellant to five months of confinement, reduction to E-1, and a bad-conduct discharge. The convening authority approved only so much of the sentence as provided for reduction to E-1 and a bad-conduct discharge, and the ACCA affirmed in a per curiam opinion. *United States v. Avery*, No. ARMY 20140202 (A. Ct. Crim. App. Feb. 19, 2019).

The charges stem from interactions between Appellant and a twelve-year-old girl, HK, whom he hired as a babysitter for his three children. The ACCA summarized those interactions as follows:

> [A]ppellant and HK frequently exchanged Facebook messages and met up clandestinely to engage in "make out" sessions that included kissing. The Facebook messages included one session wherein [A]ppellant and HK engaged in a name-calling duel. During this session, [A]ppellant called the twelve year-old girl a "cum guzzling gutter slut," which is the basis for the indecent language charge.

*Avery*, 2017 CCA LEXIS 739, at *2–3, 2017 WL 6021317, at *1.[1]

---

[1] Whether language is indecent depends in part on context. *See United States v. Green*, 68 M.J. 266, 270 (C.A.A.F. 2010) ("[T]he indecency of a word or sound must be evaluated in the context in

Because both Articles 120b and 134, UCMJ, criminalize indecent language to a child under the age of sixteen, we granted review to determine whether the former preempts the latter. We hold that, applied to the offense as charged in this case, it does not.

## II. DISCUSSION

### A. Preemption Doctrine

Whether an Article 134, UCMJ, offense "is preempted depends on statutory interpretation, which is a question of law we review de novo." *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018). The general article, Article 134, UCMJ, provides:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

---

which it is made."). For that reason, the "name-calling duel" is laid out below:

[HK:]  Your [sic] a squished whale

[RA:]  Are you calling me fat?

[HK:]  No just a squised [sic] whale

[RA:]  Meanie

[HK:]  hobo

[RA:]  Queer

[HK:]  Fag

[RA:]  Biatch

[HK:]  Motherfucker

[RA:]  Cum guzzling gutter slut

Ooooooo burn

The "preemption doctrine" limits the general article's expansive scope, prohibiting "application of Article 134 to conduct covered by Articles 80 through 132."[2] *Manual for Courts-Martial, United States* pt. IV, para. 60.c.(5)(a) (2012 ed.) (*MCM*). This doctrine is "designed to prevent the government from eliminating elements from . . . offenses under the UCMJ, in order to ease [its] evidentiary burden at trial." *Wheeler*, 77 M.J. at 293; *see also United States v. Gleason*, 78 M.J. 473, 477 (C.A.A.F. 2019) (Ryan, J., dissenting) (Preemption "preclud[es] the government from taking an existing UCMJ offense . . . removing an important element—such as the requisite intent—and charging the remaining elements as a 'novel' Article 134, UCMJ, offense.").

An offense listed in Articles 80 through 132, UCMJ, will only preempt an Article 134, UCMJ, offense if "(1) Congress intended to limit prosecution for . . . a particular area of misconduct to offenses defined in [those] specific articles of the Code, and (2) the offense charged is composed of a residuum of elements of a specific offense." *United States v. Curry*, 35 M.J. 359, 360–61 (C.M.A. 1992) (first alteration in original) (internal quotation marks omitted); *see also United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979) ("[S]imply because the offense charged under Article 134, UCMJ, embraces all but one element of an offense under another article does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way." (citation omitted)). This Court will only find a congressional intent to preempt in the context of Article 134, UCMJ, where Congress has indicated "through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article." *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010) (legislative history of Article 104, UCMJ, aiding the enemy, did not clearly indicate Congress intended that article to preempt the

---

[2] A similar limitation prevents the government from charging conduct under a novel Article 134, UCMJ, specification where that conduct is already criminalized by an enumerated Article 134, UCMJ, offense. *MCM* pt. IV, para. 60.c.(6)(c); *see, e.g.*, *United States v. Guardado*, 77 M.J. 90, 95–96 (C.A.A.F. 2017).

Article 134, UCMJ, offense of distributing sensitive material to an unauthorized individual).

In this case Appellant alleges that Article 120b(c), UCMJ, sexual abuse of child—which prohibits lewd acts upon a child, including indecent language to a child as described in Article 120b(h)(5)(C), UCMJ—preempts the enumerated Article 134, UCMJ, offense of indecent language to a child. *MCM* pt. IV, para. 89. We begin by outlining the development of these offenses, as this informs the conduct that Article 120b(c), UCMJ, and Article 134, UCMJ, indecent language, were intended to cover. *See Curry*, 35 M.J. at 360–61.

B. Development of Indecent Language Offenses

The President first included indecent language as an enumerated offense under Article 134, UCMJ, in 1984. *MCM* pt. IV, para. 89 (1984 ed.).[3] That enumeration required a showing that the accused orally or in writing communicated indecent language in a manner that was prejudicial to good order and discipline or service discrediting. *Id.* para. 89.b. Indecent language was defined as language that "is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. The language must violate community standards." *Id.* para. 89.c. Indecent language to a child under the age of sixteen warranted a higher sentence. *Id.* para. 89.e.(1). Additionally, indecent language communicated in the physical presence of a child could constitute indecent liberties with a child, another enumerated Article 134, UCMJ, offense. *Id.* para. 87.c.(2).

Until the 2008 edition of the *MCM*, there was no indecent language offense in Articles 80 through 132 of the UCMJ. At that time, Congress expanded Article 120, UCMJ, to include, inter alia, a prohibition against "indecent liberty with a child." *See* National Defense Authorization Act for Fiscal Year

---

[3] Prior to this express incorporation, indecent language had been charged as a novel Article 134, UCMJ, offense. *See, e.g.*, *United States v. Riffe*, 25 C.M.R. 650, 651 (A.B.R. 1957) (accused charged with, inter alia, "communicating indecent language to a minor"); *see also MCM* app. 6c, para. 158 (1969 rev. ed.) (including indecent language in sample Article 134, UCMJ, specification).

2006, Pub. L. No. 109-163, 119 Stat. 3136, 3258 (2006). "Indecent liberty," in turn, was defined to include communicating indecent language "in the physical presence of [a] child." Article 120(j), (t)(11), UCMJ, 10 U.S.C. § 920(j), (t)(11) (2006 & Supp. I 2007).

Congress substantially revised Article 120, UCMJ, once again in 2011. Section 541(b) of the National Defense Authorization Act for Fiscal Year 2012, titled "Rape and sexual assault of a child," created Article 120b. Pub. L. No. 112-81, 125 Stat. 1298, 1407–09 (2011) [hereinafter NDAA 2012]. This new Article 120b included a prohibition against committing lewd acts upon children. Article 120b(c), UCMJ. Congress defined "lewd act" to include "intentionally communicating indecent language to a child by any means . . . with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." Article 120b(h)(5)(C), UCMJ. Indecent language for purposes of Article 120b(c), UCMJ, has not yet been defined by either Congress or the President. *See MCM* pt. IV, para. 62.c.(2) (2019 ed.).

Throughout these amendments to Articles 120 and 120b, UCMJ, the enumerated offense of indecent language to a child, which preceded them by several decades, remained unaltered in Article 134, UCMJ. *See, e.g.*, *MCM* pt. IV, para. 89 (2008 ed.). This is not, then, the situation against which the preemption doctrine was intended to guard: namely, *creating* an enumerated offense in order to ease the government's evidentiary burden with respect to a listed offense enacted by Congress. "We cannot grant to the services unlimited authority to eliminate vital elements from . . . offenses expressly defined by Congress and permit the remaining elements to be punished as an offense under Article 134." *United States v. Norris*, 2 C.M.A. 236, 239, 8 C.M.R. 36, 39 (1953). This concern—that the government would take an extant UCMJ offense and remove a vital element to create a diluted crime under Article 134, UCMJ—is the very impetus for the preemption doctrine.[4] *See Wheeler*, 77 M.J. at 293.

---

[4] This is not to say that the preemption doctrine applies only where the Article 134, UCMJ, offense is created after its UCMJ counterpart. We simply note that the order of events here is further

## C. Residuum of Elements

We now consider whether this Article 134, UCMJ, offense is "composed of a residuum of elements of" Article 120b(c), UCMJ. *See Curry*, 35 M.J. at 361. For purposes of this analysis, we do not consider the terminal element of Article 134, UCMJ. At first blush, under a strict facial comparison of the elements of sexual assault of a child under Article 120b(c), UCMJ, and indecent language under Article 134, UCMJ, it appears that the latter is composed of a residuum of the former's elements. Article 120b(c), UCMJ, prohibits committing lewd acts upon children, which include "intentionally communicating indecent language to a child by any means . . . with an intent to abuse, humiliate, or degrade any person, or to arouse or gratify the sexual desire of any person." Article 120b(c), (h)(5)(C), UCMJ. And Article 134, UCMJ, as charged in this case, required a showing "(1) That the accused orally or in writing communicated to another person certain language; (2) That such language was indecent; and (3) That, under the circumstances, the conduct of the accused . . . was of a nature to bring discredit upon the armed forces." *MCM* pt. IV, para. 89.b. Where the victim is a child under the age of sixteen, that element must be added as well. *Id.* Seemingly, then, the only difference between the two offenses is the intent element in Article 120b, UCMJ.[5] Absent the fact that the indecent language offense under Article 134, UCMJ, preceded Article 120b(c), UCMJ, by decades, this fits hand in glove with the President's illustration of the doctrine.[6]

---

evidence that Congress did not implicitly intend to preempt the enumerated Article 134, UCMJ, offense, at least insofar as it applies to indecent language that is not sexual.

[5] We note that the parties have not raised, and we do not decide, what mens rea the Article 134, UCMJ, indecent language offense requires.

[6] That illustration follows:

> For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one

But a closer examination of the nature of indecent language as described in both case law and the *MCM* reveals that the scope of indecent language prohibited under Article 134, UCMJ, extends well beyond that language that constitutes the lewd acts with children with which Article 120b(c), UCMJ, is concerned. Article 120b(c), UCMJ, does not itself define "indecent language," but this Court has recognized two alternative definitions for that phrase, as used in Article 134, UCMJ: In addition to criminalizing language that is grossly offensive because of "its tendency to incite lustful thought," the President made punishable language that is "grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature." *Green*, 68 M.J. at 269 (internal quotation marks omitted) (citation omitted); *see also United States v. Negron*, 60 M.J. 136, 144 (C.A.A.F. 2004)); *accord MCM* pt. IV, para. 89.c. ("Language is indecent if it tends reasonably to corrupt morals *or* incite libidinous thoughts." (emphasis added)). The language must violate community standards. *See*, *e.g.*, *Green*, 68 M.J. at 269; *United States v. French*, 31 M.J. 57, 59–60 (C.M.A. 1990).

Because there is a class of indecent language communicated to a child that is, according to community standards, "grossly offensive . . . or shocks the moral sense" because of its "vulgar, filthy, or disgusting nature," *see*, *e.g.*, *Green*, 68 M.J. at 269 (internal quotation marks omitted) (citation omitted), yet that is not sexual—and thus not, without more, a lewd act—Article 134, UCMJ, is not merely a residuum of Article 120b, UCMJ.[7] One element of Article 134, UCMJ, can be satisfied in two different ways, and Article 120b(c), UCMJ, covers only one of them.

---

without the required intent, where Congress has already set the minimum requirements for such an offense in Article 121.

*MCM* pt. IV, para. 60.c.(5)(a).

[7] We leave for another day the question whether Article 120b, UCMJ, may preempt Article 134, UCMJ, insofar as it targets language that is "grossly offensive . . . because of . . . its tendency to incite lustful thought." *Id.* para. 89.c.

D. Legislative Intent

The "direct legislative language [and] express legislative history," *Anderson*, 68 M.J. at 387, of Article 120b(c), UCMJ—to the extent they reveal congressional intent at all—support this conclusion.[8] They suggest at most an intent to occupy the field as to misconduct characterized as sexual offenses against children; they do not indicate an intent for that article to occupy either the entire field of misconduct involving children or indecent language generally.

The Senate Report accompanying NDAA 2012 says nothing about Article 120b(c), UCMJ, itself but generally describes Article 120b, UCMJ, as arising from "recommend[ations] by the Joint Services Committee on Military Justice and the Secretary of Defense to address deficiencies in existing law that have been identified by military courts." S. Rep. No. 112-26, at 115 (2011). The Senate Committee on Armed Services, considering these recommendations, advised the Senate to

> separate Article 120, UCMJ, into three separate articles of the UCMJ: Article 120, UCMJ, would apply to the offenses of rape and sexual assault of any person; Article 120b, UCMJ, would apply to sexual offenses against children; and Article 120c, UCMJ, would apply to other non-consensual sexual misconduct offenses. Article 120a, UCMJ, which applies to the offense of stalking, would not be changed.

*Id.* at 114–15. This scant legislative history, if anything, indicates that the ambit of Article 120b, UCMJ, is limited to sexual offenses against children.

---

[8] We acknowledge the Supreme Court's recent reminders that "legislative history is not the law," *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1814 (2019) (internal quotation marks omitted) (citation omitted), and that using legislative history to determine legislative intent is "a relic from a bygone era of statutory construction." *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2364 (2019) (internal quotation marks omitted) (citation omitted). However minimal the legislative history of Article 120b(c), UCMJ, we consider it in addition to the statute's text because *Anderson* and other precedents considered it in determining whether punitive articles preempt enumerated offenses under Article 134, UCMJ, and neither party has questioned this aspect of these precedents.

The structure and language of Article 120b, UCMJ, provide further evidence that Congress intended only to cover the field of sexual offenses against children. The statute does not criminalize "indecent language" qua indecent language: Instead, Article 120b(c), UCMJ, proscribes "lewd act[s]" upon children, and "lewd act[s]" is defined to include indecent language "with an intent to abuse, humiliate, or degrade" or to "gratify the sexual desire of any person." Article 120b(h)(5)(C). It thus criminalizes neither all indecent language, nor vulgar language as a whole, but only indecent language that constitutes a "lewd act"—that is, a "sexually unchaste or licentious" act. *Webster's Third New International Dictionary Unabridged* 1301 (1986) (entry for "lewd").

Because no "direct legislative language or express legislative history," *Anderson*, 68 M.J. at 387, compels the conclusion that Congress intended to wholly subsume the field of indecent language communicated to children within Article 120b(c), UCMJ, we cannot say "Congress intended to limit prosecution" for all indecent language to that provision. *Curry*, 35 M.J. at 360 (internal quotation marks omitted) (citation omitted). There is neither explicit nor implicit congressional intent to preempt Article 134, UCMJ, indecent language under the facts of this case. *Cf. Kick*, 7 M.J. at 85 (expressing extreme reluctance to find congressional intent to preempt absent a clear showing of contrary intent).

### E. Appellant's Language

Context matters, *see Green*, 68 M.J. at 270, and in this case the indecent language was simply not a sexual or lewd act as contemplated by Article 120b(c), (h)(5)(C). Because the phrase charged invoked crude epithets, the ACCA aptly characterized the exchange between Appellant and HK as a name-calling duel. Further, HK's cross-examination indicates that the language she and Appellant used was not calculated to "incite lustful thought," but was a joke—albeit a "vulgar, filthy, or disgusting" one.[9] *Green*, 68 M.J. at 269 (internal quotation marks omitted) (citation omitted).

---

[9] This line of questioning is reproduced in part below:

The Article 134, UCMJ, offense of indecent language is more than a residuum of Article 120b(c), UCMJ, and Congress has not expressly or indirectly indicated that it intended Article 120b(c), UCMJ, to cover the entirety of offenses involving indecent language communicated to children. Accordingly, we hold that Article 120b, UCMJ, does not preempt the charged Article 134, UCMJ, offense of indecent language in this case.

### III. DECISION

The judgment of the United States Army Court of Criminal Appeals is affirmed.

---

[Counsel:] And that's when he called you a cum guzzling—something along those lines, right?

[HK:] Yes, sir.

[Counsel:] Okay. And this was all in joke, right?

[HK:] Yes, sir.

[Counsel:] This was in jest?

[HK:] Yes, sir.

Appellant has not questioned that this language is legally and factually sufficient to satisfy a violation of Article 134, UCMJ, indecent language.